IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CHARLES O. CRESS, deceased, and CHRISTINA ATHEY, disabled child, | ) ) ) | No. 78725-0-I |
| Appellants, | ) ) | DIVISION ONE |
| | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| DEPARTMENT OF LABOR & INDUSTRIES OF THE STATE OF WASHINGTON, | ) ) ) ) ) | |
| Respondent. | ) ) | FILED: December 9, 2019 |

HAZELRIGG-HERNANDEZ, J. — Christina Athey seeks reversal of a superior court order upholding a decision of the Board of Industrial Insurance Appeals (BIIA). The BIIA determined that under RCW 51.32.050(6), Athey was a dependent child entitled to five percent of deceased worker Charles Cress' monthly wages after the death of his spouse. Athey contends that the statute entitles her to 35 percent of Cress' monthly wages. Because the applicable portion of the statute is ambiguous and ambiguities are resolved in favor of the claimant, we reverse.

FACTS

Charles Cress sustained an industrial injury in 1981. The following year, the Department of Labor and Industries determined that he was permanently and

totally disabled, and he began receiving pension benefits. Charles[1] received these benefits until his death in 1996, at which point his wife, Elva, applied for and was granted survivor's benefits. Elva died in 2014. After Elva's death, Christina Athey applied for survivor's benefits as a dependent child of the Cresses. Athey meets the applicable statutory definition of a "child." The Department determined that she was entitled to five percent of Charles' monthly wages under RCW 51.32.050(2) and (6).

Athey appealed to the Board of Industrial Insurance Appeals (BIIA), claiming she was owed 35 percent of Charles' wages under the statute. The parties stipulated to the foregoing facts, and the sole issue presented to the BIIA was: "What is the correct amount of survivor's benefits to which Christina Athey is entitled under RCW 51.32.050?" The BIIA agreed with the Department's decision that Athey was entitled to five percent of Charles' wages under the statute.

Athey appealed the BIIA's ruling to the superior court. The parties filed cross-motions for summary judgment. The court granted summary judgment in favor of the Department, finding the statute unambiguous and upholding the Department's decision. The court explained its rationale in its oral ruling:

> "[T]he Court is bound to follow . . . the directive in the language of the statute. And I don't think the language is ambiguous. I think the language is clear, and there doesn't seem to be any precedence for the plaintiff's reading of the statute in this case.
> The language requires that when the surviving spouse of a deceased worker dies, then the benefits are as if the surviving spouse remarried. 'As if' is the way that I think the statute is to be read. And that requires a reading of 5%. It's drastic, it's hard, but it's what the Legislature provided in the language of the statute."

---

[1] The Cresses' first names are used for clarity. We intend no disrespect.

Athey moved for reconsideration of the judgment, which was denied. She timely appealed.

## ANALYSIS

### I. Benefits

Athey argues that the superior court erred when it upheld the BIIA's determination that she was entitled to only five percent of Charles' monthly wages under RCW 51.32.050. She contends that she should receive 35 percent of Charles' wages.

Workers injured in the course of employment and surviving spouses or children of workers killed in the course of employment are entitled to compensation as set forth in the Industrial Insurance Act[2] (IIA). RCW 51.32.010. The IIA "shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010. The Washington Supreme Court has construed this directive to mean that courts should "resolve doubts as to the meaning of the IIA in favor of the injured worker." McIndoe v. Dep't of Labor & Indus., 144 Wn.2d 252, 257, 26 P.3d 903 (2001).

A person aggrieved by an action or decision of the Department in administering the IIA may appeal to the BIIA. RCW 51.52.050(2)(a). Decisions of the BIIA may be appealed to the superior court. RCW 51.52.110. The court undertakes a de novo review of the record that was before the BIIA. RCW 51.52.115. On appeal of the superior court's ruling, we apply the ordinary civil

---

[2] Chapter 51, RCW

standard of review. RCW 51.52.140; <u>Malang v. Dep't of Labor & Indus.</u>, 139 Wn. App. 677, 683, 162 P.3d 450 (2007). "We may substitute our own judgment for that of the agency regarding issues of law, but we give great weight to the agency's interpretation of the law it administers." <u>Bennerstrom v. Dep't of Labor & Indus.</u>, 120 Wn. App. 853, 858, 86 P.3d 826 (2004).

Appellate courts review summary judgment motions de novo, engaging in the same inquiry as the trial court. <u>Afoa v. Port of Seattle</u>, 176 Wn.2d 460, 466, 296 P.3d 800 (2013). The trial court properly grants summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

The interpretation of a statute is a question of law that we also review de novo. <u>Kustura v. Dep't of Labor & Indus.</u>, 169 Wn.2d 81, 87, 233 P.3d 853 (2010). When interpreting a statute, our objective is to ascertain and carry out the legislature's intent in enacting the statute. <u>Dep't of Ecology v. Campbell & Gwinn, L.L.C.</u>, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). If the meaning of the statute is "plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." <u>Id.</u> at 9–10. We are required to give effect to every word in a statute whenever possible. <u>Dennis v. Dep't of Labor & Indus.</u>, 109 Wn.2d 467, 479, 745 P.2d 1295 (1987). "No word is deemed inoperative or superfluous unless it is the result of an obvious mistake or error." <u>Id.</u>

To determine the plain meaning of a statute, we consider its text, the context of the statute, related provisions, amendments to the provision, and the scheme as a whole. <u>Columbia Riverkeeper v. Port of Vancouver USA</u>, 188 Wn.2d 421, 432,

395 P.3d 1031 (2017). If the statute remains susceptible to more than one reasonable interpretation after we complete this inquiry, it is ambiguous, and we may turn to principles of statutory construction, legislative history, and relevant case law to determine the legislature's intent. Cockle v. Dep't of Labor and Indus., 142 Wn.2d 801, 808, 16 P.3d 583 (2001).

The IIA contains a specific statute detailing the method of calculating benefits to be paid to a worker's family after their death. RCW 51.32.050. The subsections of this statute break down the payments to apply in various factual scenarios. Subsection (2) provides the calculations for benefits when the injured worker dies because of the injury and leaves a surviving spouse with or without children. RCW 51.32.050(2). Generally speaking, a surviving spouse is entitled to receive benefits "for life or until remarriage." RCW 51.32.050(2)(a). If the surviving spouse remarries, the benefits to the surviving spouse terminate, but a deceased worker's surviving child begins receiving five percent of the worker's wages. RCW 51.32.050(2)(c). The IIA allows a worker's child who would otherwise have aged out to remain qualified as a "child" for purposes of the IIA if "the child is a dependent as a result of a physical, mental, or sensory handicap." RCW 51.08.030.

Subsection (3) applies when the deceased worker leaves a surviving child but no surviving spouse. RCW 51.32.050(3). In that case, the child is entitled to receive benefits in the amount of 35 percent of the worker's wages. Id. Subsection (4) in its entirety reads as follows: "In the event a surviving spouse receiving monthly payments dies, the child or children of the deceased worker shall receive

the same payment as provided in subsection (3) of this section." RCW 51.32.050(4).

The statute also contains a specific subsection that details slightly different death benefits for older claims:

> For claims filed prior to July 1, 1986, if the injured worker dies during the period of permanent total disability, whatever the cause of death, leaving a surviving spouse, or child, or children, the surviving spouse or child or children shall receive benefits as if death resulted from the injury as provided in subsections (2) through (4) of this section. Upon remarriage or death of such surviving spouse, the payments to such child or children shall be made as provided in subsection (2) of this section when the surviving spouse of a deceased worker remarries.

RCW 51.32.050(6).

The parties present two very different interpretations of this subsection. Athey contends that the second sentence applies only when the surviving spouse of a deceased worker remarries and that, as the child of a surviving spouse who never remarried, her benefits should be calculated using the first sentence of the subsection. Under her interpretation, the "when" clause sets out a necessary condition for the second sentence to apply. She argues that the "remarriage or death" referenced in the second sentence concerns the death of the remarried spouse. Athey believes this language is intended to clarify that the child of a remarried spouse would remain entitled only to five percent of the deceased worker's wages when the remarried spouse died, rather than an increased payment of 35 percent.

The Department argues that the "when" clause does not restrict the time that the second sentence applies, but specifies which provision of subsection (2) should be used to calculate the child's benefits when the surviving spouse

remarries or dies. Because subsection (2) contains multiple methods of calculating benefits covering many different factual scenarios, the directive to a specific fact pattern under subsection (2) clarifies the appropriate provision.

The word "when" can mean "at what time" or "in what circumstances." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2602 (3d ed. 2002). Applying these two different meanings to the statute yields two very different interpretations of subsection (6), which basically mirror the two interpretations presented by the parties. Athey contends the fact that the phrase beginning with the word "when" is not set off by a comma indicates that it is a restrictive clause restricting the time of the main verb, "be made." Under her interpretation, we could reword the second sentence to read more clearly as follows: "at the time the surviving spouse of a deceased worker remarries, upon remarriage or death of such surviving spouse, the payments to such child or children shall be made as provided in subsection (2) of this section."

Although she is correct that the "when" clause is restrictive because it is necessary to the meaning of the sentence, the word "when" could be read to restrict the word "provided." This reading, which aligns with the Department's interpretation of the statute, is easier to understand when we reword the provision with active verbs: "upon remarriage or death of such surviving spouse, the Department shall make payments to the child or children as subsection (2) of this section provides in the circumstance that the surviving spouse of a deceased worker remarries."

Reading subsection (6) as a whole under the Department's interpretation, however, reveals a potential ambiguity. The first sentence of the subsection provides that the surviving spouse or child or children in this situation shall receive benefits "as provided in subsections (2) through (4)." RCW 51.32.050(6). Subsection (2) applies when there is a surviving spouse, and subsection (3) applies when there is a child or children but no surviving spouse. Subsection (4), however, applies only when a surviving spouse receiving monthly benefits dies and leaves a surviving child. Because the second sentence of subsection (6) explicitly applies to this same scenario, the reference to subsection (4) in the first sentence appears to be superfluous.

Athey argues that the reference to subsection (4) demonstrates that subsection (6) contemplates payment of 35 percent of a worker's wages to a dependent child after a surviving spouse dies without remarrying. The Department argues that the first sentence applies when the <u>worker</u> dies (as opposed to the second sentence, which applies when the <u>surviving spouse</u> dies) and establishes the benefit for the initial beneficiary. Although this is mostly accurate, it does not explain the reference to subsection (4), which applies when the surviving spouse— who would have been the initial beneficiary—dies.

Neither explanation provided by the parties is without its flaws. Athey's interpretation requires considerable rewording of the subsection, while the Department's reading renders a portion of the provision superfluous.

The amendment history of subsection (6) does not provide much clarity. In the version of the statute approved in 1965, subsection (6) provided separate

benefit schemes for the child of a deceased worker depending on whether a surviving spouse died or remarried. Laws of 1965, Ex. Sess., ch. 122, § 1. When the surviving spouse remarried, the child's benefits were to "continue as before"— meaning, continue as set out in subsection (2). Id. If, however, after the worker's death the child "is or shall be without father or mother"—that is, there was no surviving spouse or the surviving spouse subsequently died—then the child would receive the same benefit as under subsection (3) or (4). Id.

In the 1971 amendment, the subsection was amended to state that the surviving spouse would receive "benefits as if death resulted from the injury as provided in subsections (2) through (5) of this section." Laws of 1971, 1st Ex. Sess., ch. 289, § 7. The statute did not specifically state the benefit that a child would receive after the death of a surviving spouse. Id. The remarriage provision in subsection (6) was not amended, so a child of a remarried spouse would continue to receive benefits under subsection (2). Id.

In 1975, the legislature added the phrase "or death" to the second sentence of subsection (6), which had previously only applied "[u]pon remarriage." Laws of 1975, 1st Ex. Sess., ch. 179, § 1. The legislature also removed the language stating that the child's benefits were to "continue as before" and substituted the functional equivalent of the current language that the payments "be made as provided in subsection (2) of this section when the surviving spouse of a deceased [worker] remarries." Id.

Presumably, the legislature had noticed that the subsection did not specify the benefit that a child would receive after the death of an unmarried surviving

spouse and intended to fill that gap. However, it is not clear from these amendments whether the legislature intended to create one unified benefit scheme that would apply when a surviving spouse remarried or died without remarrying or if it intended to clarify the distinction between these two eventualities.

Because the provision could reasonably be read two different ways and the legislative intent is unclear, RCW 51.32.050(6) is ambiguous. The IIA and the Washington Supreme Court direct us to construe the provision liberally in favor of the claimant to achieve the IIA's purpose of providing compensation when workers are injured in the course of employment. RCW 51.12.010; Murray v. Dep't of Labor & Indus., 192 Wn.2d 488, 501, 430 P.3d 645 (2018). Accordingly, we construe the statute in Athey's favor. Under her reasonable interpretation of the statute, she is entitled to 35 percent of Charles' wages.

II.    Attorney Fees

Athey requests that she be awarded reasonable attorney fees as authorized by RCW 51.52.130. Under RAP 18.1(a), we may grant a party reasonable attorney fees on appeal if the applicable law allows for such an award. The IIA provides for an award of reasonable attorney fees to a worker or beneficiary who prevails on appeal and obtains relief. RCW 51.52.130. Because Athey has prevailed in this appeal, she is entitled to an award of attorney fees in an amount to be determined by a commissioner of this court in accordance with RAP 18.1.

Reversed.

WE CONCUR: